IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SALLY JOANNE MARTIN | ) | |
| | ) | |
| v. | ) | No. 3:18-0088 |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION | ) | |

To:   The Honorable Waverly D. Crenshaw, Chief District Judge

# REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 14. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled," and therefore not entitled to Disability Insurance Benefits ("DIB") or Supplement Security Income ("SSI"). (*See* Administrative Transcript (DE 12) at 36-38).[1] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See* DE 5.

Upon review of the administrative record and consideration of the parties' filings, I find no error that would necessitate remand in this case and therefore recommend that Plaintiff's motion for judgment on the administrative record (DE 14) be **DENIED.**

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on March 11 and 25, 2016, respectively, due to high blood pressure, irritable bowel syndrome ("IBS"), diverticulosis, abdominal pain and swelling, depression, posttraumatic stress disorder ("PTSD"), and anxiety, with an alleged disability onset date of October 3, 2015. (Tr. 92-93, 120).[2] Her applications were denied initially and upon reconsideration. (Tr. 91-92, 152-53). Pursuant to her request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ Michelle L. Alexander on August 3, 2017. (Tr. 54). On August 16, 2017, the ALJ denied the claim. (Tr. 36-38). On December 4, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision. (Tr. 1-4). Therefore, the ALJ's decision stands as the final determination of the Commissioner.

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since October 3, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: recurrent moderate major depressive disorder and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb

---

[2] The medical records also indicated a history of obesity and headaches. (Tr. 120).

ladders/ropes/scaffolds; no work with or near dangerous and moving type of equipment or machinery, moving mechanical parts and unprotected heights but can operate a motor vehicle; can understand, remember and apply simple to multi-step detailed instructions and tasks; interact frequently with supervisors and occasionally with co-workers and the general public; maintain concentration, persistence and pace for 2 hours at a time over an 8-hour work day; adapt to infrequent changes in a work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 10, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 41-48).

On appeal, Plaintiff submits two assertions of error: (1) that the ALJ failed to properly consider the opinion of a treating source; and (2) that the ALJ improperly discounted Plaintiff's credibility. DE 15 at 6, 12. Plaintiff therefore requests that this case be reversed and benefits awarded or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 14-15.

## II. ANALYSIS

### A. Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at

issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; and at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. §§ 404.1520(a), 416.920(a). "Past relevant work" is defined as work that claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (citing 20 C.F.R. § 404.1560(b)(1)). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v.*

*Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The Commissioner's Decision

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform a full range of exertional work with express limitations to account for her severe impairments, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite such limitations. (Tr. 41-48).

### C. Assertions of Error

#### 1. The opinion of the treating physician.

Plaintiff first argues that the ALJ violated the so-called "treating physician rule" by failing to adequately consider the multiple opinions provided by clinical psychologist Robert Berberich regarding the severity of her alleged mental impairments.[3] Pursuant to this rule, the ALJ is required to give controlling weight to the opinion of a treating physician if that opinion is "well-supported

---

[3] The treating physician rule applies to all Social Security claims filed before March 27, 2017, such as the instant one. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the opinion is not given controlling weight, the ALJ must determine the amount of weight to accord it based on a variety of factors such as the length, frequency, nature, and extent of the treatment relationship, whether the physician is a specialist, and the degree to which the opinion is consistent with the record as a whole. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). The ALJ is required to provide "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers" the basis for such weight allocation. *Johnson-Hunt v. Comm'r of Soc. Sec.,* 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec. Admin.,* 405 F. App'x 997, 1000 (6th Cir. 2011)).

On January 12, 2017, Dr. Berberich completed a psychiatric evaluation at the request of the Commissioner, in which he opined that Plaintiff's condition was "currently in an initial diagnostic phase with potentially accurate diagnoses in place but lapsed treatment causing an apparent intense return of symptoms." (Tr. 1503). Such diagnoses included mood disorder due to chronic anxiety, panic disorder without agoraphobia, PTSD, and "bipolar and related disorder due to another medical condition." (Tr. 1499). Dr. Berberich discussed psychological testing which had been administered one week earlier, namely a Minnesota Multiphasic Personality Inventory ("MMPI"), which yielded invalid results that were "possibly associated with [Plaintiff] developing desperation in obtaining professional verification of [her] diagnosis and treatment." (Tr. 1502). Dr.

Berberich also assigned a global assessment of functioning ("GAF") score of 45 (Tr. 1499), but failed to articulate any specific functional limitations caused by Plaintiff's impairment.[4]

On May 2, 2017, Dr. Berberich completed a medical source statement ("MSS") in which he opined that Plaintiff was "extremely" limited in her ability to carry out detailed instructions and respond appropriately to work pressures in a usual work setting, as well as "markedly" limited in her ability to carry out short and simple instructions, make judgments on simple work-related decisions, and interact appropriately with the public, her supervisors, and co-workers. (Tr. 1539-40).[5] There were no diagnoses included anywhere in the MSS. When prompted to support his severe assessment, Dr. Berberich instead stated somewhat abstrusely that Plaintiff has a "constant feeling of frustration [that] make[s] her extremely susceptible to action aimed at stopping any even minor intrusions," and that her "concentration, willpower, and physical resources prove highly variable[.]" (Tr. 1539-40).

Dr. Berberich also provided a report on July 5, 2017 concerning additional MMPI testing that Plaintiff underwent one month earlier (Tr. 1530-38), the results of which again proved to be "unscorable" based on Plaintiff's "pattern of answers [that] fell outside any of the scales that the test uses[.]" (Tr. 1535). Dr. Berberich noted that such abnormal results could be explained by malingering. (Tr. 1535). Nevertheless, Dr. Berberich assigned Plaintiff a global assessment of

---

[4] A GAF score is a "clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503, n.7 (6th Cir. 2006). A score between 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000).

[5] An "extreme" limitation is defined as a "major limitation ... There is no useful ability to function in this area," while a "marked" limitation is described as one that is "serious ... The ability to function is severely limited but not precluded." (Tr. 1539).

functioning ("GAF") score of 40, which denotes "some impairment in reality testing or communication," and "major impairment in several areas, such as work, family relations, judgment, thinking, and mood." (Tr. 1537).

A threshold issue that must first be addressed is whether Dr. Berberich represents a treating physician under 20 C.F.R. § 404.1527(c). Although the ALJ did not explicitly find that Dr. Berberich's treatment failed to establish the requisite relationship, she accorded "little weight" to his opinions based in part on her belief that Dr. Berberich "lacked a treatment relationship" because he had seen Plaintiff just four times prior to the psychiatric evaluation completed on January 12, 2017. (Tr. 45, 1498). If Dr. Berberich is not a treating physician, he will instead be considered an examining physician whose opinion is not subject to the rigorous scrutiny of the treating physician rule. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) ("[B]ecause [the provider] was an examining psychologist—not a treating doctor—his opinion is not entitled to any special deference.").

Plaintiff claims that Dr. Berberich "had clearly seen and treated [her] for several months" prior to his evaluation on January 12, 2017 (DE 15 at 7-8), and points to Dr. Berberich's indication in his report that such treatment included "four visits, 45-60 minutes each on 10/01/2016, 11/04/2016, 11/2016, 1/09/2016[.]" (Tr. 1498).[6] Regrettably, there are no records documenting these visits anywhere in the administrative record, the responsibility for which belongs to Plaintiff. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the

---

[6] The last date appears to involve a typographical error that should instead denote a visit occurring in 2017.

[Commissioner] to make a disability determination, rests with the claimant.") (internal citation omitted). This is problematic given that courts in this circuit have held that in some circumstances, even five visits with a provider may be insufficient to establish the requisite ongoing treating relationship. *See Luteyn v. Comm'r of Soc. Sec.,* 528 F. Supp. 2d 739, 743 (W.D. Mich. 2007) (citing cases).

This dearth of documentation is especially vexing in light of Plaintiff's reliance on what she identifies as an itemized statement showing charges for numerous office visits with Dr. Berberich that occurred prior to the ALJ's decision. (Tr. 21-22). While this document appears to indicate that Dr. Berberich saw Plaintiff at least a dozen times between October of 2016 and August of 2017 (Tr. 21-22), there is no other evidence of any of these alleged visits in the administrative record. More importantly, this document was not provided to the ALJ prior to the issuance of her opinion, which prevents the undersigned from considering such evidence. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472-73 (6th Cir. 2014) ("We have repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g).") (citing *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)). The Court is therefore placed in the unfortunate position of having access to evidence that would presumably establish Dr. Berberich as a treating physician, yet being hamstrung by Plaintiff's failure to timely submit such evidence.

There is a notable exception to this bar contained in sentence six of 42 U.S.C. § 405(g), which states the following:

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Plaintiff makes a perfunctory attempt to fulfill this burden by claiming that the itemized statement is "clearly" new and material (DE 15 at 9), but fails to provide good cause for failing to submit such evidence to the ALJ. Plaintiff instead argues that she "could not have known until she received the unfavorable ALJ decision that the ALJ was questioning Dr. Berberich's role as treating physician" (*id*.), an explanation which falls woefully short of establishing good cause for failing to provide the ALJ with any notes documenting actual treatment by Dr. Berberich. The Court also notes that while counsel for Plaintiff assured the ALJ that Dr. Berberich had provided treatment "half a dozen or more times" (Tr. 58), neither Plaintiff nor counsel could identify the duration of such treatment or even when it began. (Tr. 82-83). Plaintiff's suggestion that good cause is established because the ALJ should simply have accepted Dr. Berberich's status as a treating physician without question is thus rejected. *See Henderson v. Colvin*, No. 2:13-cv-0042, 2016 WL 331251, at *6 (M.D. Tenn. Jan. 7, 2016), *report and recommendation adopted*, 2016 WL 324577 (M.D. Tenn. Jan. 26, 2016) ("Although the records submitted by Plaintiff are undoubtedly material ... Plaintiff has not provided good cause for failing to present such evidence before or during [her] hearing with the ALJ.").

Regardless, the undersigned additionally and alternatively finds that substantial evidence supports the weight assigned to Dr. Berberich's opinions. With respect to Dr. Berberich's May 2, 2017 MSS, the ALJ appropriately concluded that the numerous "extreme" and "moderate" limitations contained therein were not supported by treatment notes from other providers, including Centerstone of Tennessee ("Centerstone") and Mental Health Cooperative ("MHC"). (Tr. 45). The Court notes seven documented office visits since the alleged onset date, beginning on January 13, 2016, at which time Plaintiff reported to providers at Centerstone that she was

having "good days and bad days" and "coping better with stressors." (Tr. 1027). Despite describing her mood as "really anxious" one year later, Plaintiff demonstrated a linear thought process with a logical flow of thoughts, no hallucinations, delusions, or suicidal ideations, no psychomotor agitation, and a moderate ability for abstract thinking. (Tr. 1492). She reported her mood as stable with no significant anxiety or depression in March of 2017, and thus requested to continue her current medication regimen. (Tr. 1524). Her mood was "the same" in April of 2017, with mostly normal mental exam findings. (Tr. 1522). She stated that she was still experiencing anxiety and "bouts of depression" in August of 2017, but denied mania, mood swings, and excessive irritability, and again exhibited mostly normal findings during a mental status evaluation. (Tr. 1519). Although the records certainly indicate that Plaintiff experienced issues with anxiety and depression, the undersigned cannot conclude that the ALJ erred by finding that these records failed to support the severe restrictions contained in the MSS. *Cf. Quinlan v. Comm'r of Soc. Sec.*, No. 1:14-cv-427, 2015 WL 3447844, at *11 (S.D. Ohio May 28, 2015), *report and recommendation adopted*, 2015 WL 3822624 (S.D. Ohio June 19, 2015) (ALJ's finding that a claimant's mental impairment was non-disabling supported by records documenting an absence of abnormalities of thought content and mild to moderate symptoms that improved with medication).

Plaintiff claims the ALJ erred by focusing exclusively on the Centerstone and MHC notes without considering that she was additionally "not only seeing Dr. Berberich for treatment but ... undergoing extensive diagnostic testing by him." DE 15 at 9-10. The first problem with this argument has been established: there were no office notes documenting any treatment with Dr. Berberich in the record, thus the ALJ could not have considered the findings from any such treatment. Moreover, Dr. Berberich's "extensive diagnostic testing" on January 12 and July 5 of

2017 yielded no definitive scores, which may have been caused by malingering on the part of Plaintiff (Tr. 1502, 1535), thereby preventing the ALJ from ascribing any weight to such testing. *Cf. Glasgow v. Comm'r of Soc. Sec.*, No. 16-4213, 2017 WL 2628893, at *2 (6th Cir. June 19, 2017) (affirming ALJ's finding that Plaintiff's unreliable testing results failed to support an examining physician's suggested functional limitations).

Plaintiff also faults the ALJ for dismissing GAF scores that were assigned over the course of multiple years, including a score 39 reported in February of 2012. (Tr. 700). While such a score may indeed reflect a severe impairment,[7] Plaintiff's argument is the proverbial double-edged sword given that she continued working until the alleged onset date nearly four years later, which suggests the absence of a disabling mental condition. *Cf. Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988) ("Any work done during a period of claimed disability may show that a claimant can engage in substantial gainful activity"). Moreover, even assuming that Plaintiff's reliance on the ALJ's failure to discuss the purported consistency of GAF scores documented several years apart is not stymied by circuit precedent, *see Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (internal citation omitted), GAF measurements carry no appreciable weight in a social security context and cannot serve as a basis for reversal. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.").

---

[7] A score of 39 indicates "some impairment in reality testing or communication ... or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood[.]" Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000).

Plaintiff finally argues that the ALJ improperly accorded greater weight to the opinions of non-examining State physicians. Plaintiff correctly notes that despite giving "great weight" to such opinions, the ALJ found that the State physicians' determination that Plaintiff suffered from only mild difficulties in completing activities of daily living failed to adequately consider her claim "that she rarely went outside and went days without showering and often remained in her pajamas." (Tr. 45). The undersigned agrees that reliance on Plaintiff's allegations in this instance is incompatible with the ALJ's subsequent decision to discount Plaintiff's credibility based on these very claims, as discussed in more detail below; however, giving credence to Plaintiff's allegations when weighing a State physician's opinion is not itself violative of the treating physician rule, especially when such consideration works to Plaintiff's benefit. *See Kaplun v. Comm'r of Soc. Sec.*, No. 2:14-cv-0439, 2015 WL 736475, at *6 (S.D. Ohio Feb. 20, 2015), *report and recommendation adopted*, 2015 WL 1954453 (S.D. Ohio Apr. 29, 2015) ("[A]ny error in not adopting the state agency reviewers opinions in their entirety—as opposed to the ALJ's approach of according them significant weight but giving Plaintiff the benefit of the doubt based on [her] testimony—would be harmless, since that approach is ... more favorable to the Plaintiff."). The Court therefore cannot agree that this discrepancy warrants reversal of the Commissioner's decision.

Dr. Berberich proffers multiple severe mental restrictions that fail to find support in the ambiguous results derived from his psychological testing or the longitudinal record of Plaintiff's treatment history. Nor does Dr. Berberich provide a meaningful justification for his opinion, instead claiming opaquely that Plaintiff's "concentration, willpower, and physical resources prove highly variable." (Tr. 1539). The inadequacy of this explanation, coupled with the lack of evidence

documenting any treatment with Plaintiff, provides further support for the weight allocated to his opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). For these reasons and those previously delineated, the undersigned finds that substantial evidence supports the ALJ's evaluation of Dr. Berberich's opinion.

2. **Credibility.**

Plaintiff next contends that the ALJ improperly discounted her statements regarding the severity of her alleged mental conditions. DE 15 at 12. When a claimant alleges the existence of disabling symptoms, the ALJ is required to examine whether medical evidence supports a finding of an underlying medical condition and, if so, determine whether the condition is of such a severity that it could reasonably be expected to produce the alleged symptoms. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). If the claims are not substantiated by medical evidence, the ALJ is required to evaluate the credibility of the claimant's allegations based on the record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (March 16, 2016).[8] An ALJ's credibility determination may not be disturbed "absent compelling reason." *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987)). Significantly, even if the determination is based partially on invalid

---

[8] SSR 16-3p, which replaced SSR 96-7p and was in effect at the time of the administrative hearing, removes the term "credibility" and directs the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms," and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2016 WL 1119029, at *6.

15

reasons, it "will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013).

Plaintiff reiterates the ALJ's favorable weighing of her allegations concerning reluctance to leave the house and infrequent showering when considering the State physicians' opinions (Tr. 45) while simultaneously finding that such reports were contradicted elsewhere in the record:

> [S]he reported to her caseworker ... that she would go for days without showering[.] However, treatment notes described her appearance as consistently clean and appropriately dressed[.] In a Function Report, she indicated she rarely went outside but only to smoke, and did not like leaving her home. However, in the same report, she noted she went out to eat with her boyfriend occasionally and shopped in stores for groceries[.]

(Tr. 46). The undersigned shares Plaintiff's frustration with the ALJ's inconsistency in this instance, particularly since this excerpt immediately follows the paragraph in which the ALJ appears to accept these very claims as credible. (Tr. 45-46).

Nonetheless, the Court finds that substantial evidence supports the ALJ's overall determination as to the consistency of Plaintiff's allegations. The ALJ considered the effectiveness of prescribed medication, including treatment notes indicating that Plaintiff's bipolar disorder was "moderately well controlled" (Tr. 46, 1468), as was appropriate. *See Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 641 (6th Cir. 2016) ("The ALJ is permitted to consider the effectiveness of medication used to control ... symptoms associated with a claimant's impairments.") (internal citation omitted). Plaintiff's psychiatric symptoms were also frequently normal with repeated findings of good judgment, normal mood and affect, active and alert mental status, as well as normal recent and remote memory. (Tr. 1467, 1470, 1492). Such findings were in fact documented during her final office visit (Tr. 1519), which provides additional support for the ALJ's conclusion. *See Quinlan v. Comm'r of Soc. Sec.*, No. 1:14-cv-427, 2015 WL 3447844, at *11 (S.D. Ohio May

28, 2015), *report and recommendation adopted*, 2015 WL 3822624 (S.D. Ohio June 19, 2015) (ALJ's finding that a claimant's mental impairment was non-disabling supported by records documenting an absence of abnormalities of thought content and mild to moderate symptoms that improved with medication). The ALJ further noted Plaintiff's lack of strict compliance with her medication regimen, which similarly bolsters her analysis. *Ranellucci v. Astrue*, No. 3:11-cv-0640, 2012 WL 4484922, at *11 (M.D. Tenn. Sept. 27, 2012) (noting that the ALJ "could properly use Plaintiff's non-compliance with treatment as a factor in analyzing Plaintiff's credibility").

With respect to the latter, Plaintiff argues that the ALJ overemphasizes her non-compliance since the only medication that she "rarely" took was mirtazapine, which she dismisses as a mere "bedtime medication." DE 15 at 14. Yet the provider recommended that Plaintiff follow this prescription specifically to address her depressive symptoms, which were identified as her primary "core problem." (Tr. 1494).[9] It is unclear how the ALJ's focus on adherence to such recommended treatment reaches the level of pedantry alleged by Plaintiff given that any degree of non-compliance with a medication schedule is properly considered when evaluating credibility. *Robertson v. Colvin*, No. 4:14-cv-35, 2015 WL 5022145, at *6 (E.D. Tenn. Aug. 24, 2015).

While not without flaws, the ALJ's analysis includes substantial evidence to support her ultimate conclusion that Plaintiff's allegations were "not entirely consistent" with the record. (Tr. 46). The ALJ appropriately considered mental exam findings, effectiveness of prescription medication, and Plaintiff's non-compliance with her course of treatment. The Court therefore finds that the ALJ's failure to evenly consider the extent to which Plaintiff's daily activities supported

---

[9] The undersigned also notes that mirtazapine is described as a medication "used to treat depression." Mayo Clinic, *Mirtazapine (Oral Route)*, MayoClinic.com, https://www.mayoclinic.org/drugs-supplements/mirtazapine-oral-route/description/drg-20067334 (last visited February 5, 2019).

17

her allegations represents harmless error and fails to justify reversal of the Commissioner's decision. *Cf. Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (finding that the presence of substantial evidence negates an ALJ's reliance on "two invalid reasons in reaching an adverse credibility determination") (citing *Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1162 (9th Cir. 2008)). The Court therefore rejects this assertion of error.

## III.  CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 14) be DENIED and the Commissioner's decision be AFFIRMED.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).



Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge